IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

CONNIE WALKER,
on behalf of
Eddie C. Walker, deceased,

     Plaintiff,

v.                                  CASE NO. 3:07-cv-00400

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, filed by Eddie C. Walker. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Mr. Walker (hereinafter referred to as "Claimant") died on April 15, 2003 due to "combined non-prescribed morphine and prescribed venlafaxine [also known as Effexor, an antidepressant] intoxication...Excessive ingestion of drugs."  (Tr. at 87.) Plaintiff Connie Walker, Claimant's widow, is pursuing his claims.

(Tr. at 73.)

Claimant filed applications for SSI and DIB on October 29, 2002, alleging disability as of August 15, 1999, due to depression, back pain, forgetfulness, nerves, panic attacks, chest pain, breathing problems, hand and leg numbness, and an inability to read and write.[1]  (Tr. at 79-81, 351.)  The claims were denied initially and upon reconsideration.  (Tr. at 55-59, 61-62, 314-18, 320-22, 351.)  Ms. Walker requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 19, 2004, before the Honorable Andrew J. Chwalibog.  (Tr. at 26, 63, 329-47.)  Mrs. Walker appeared and testified, as did a Vocational Expert ("VE"). (Tr. at 329-47.)  By decision dated August 19, 2004, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 13-22.)  A Request for Review of the ALJ's decision was filed on October 18, 2004.  (Tr. at 9.)  Additional evidence was submitted. (Tr. at 8.)   The ALJ's decision became the final decision of the Commission on December 17, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-8.)

On February 16, 2005, Mrs. Walker appealed to the United States District Court for the Southern District of West Virginia.

---

[1] An unfavorable SSA Decision dated August 27, 2002, shows Claimant also filed a SSI application on March 6, 2001 and a DIB application on March 20, 2001, asserting disability for chest pain, back and leg pain, breathing problems, tiredness, restlessness and inability to concentrate. (Tr. at 38-50)  The Decision also states that Claimant previously applied for similar benefits which were denied in August 1994, and no appeal was pursued. (Tr. at 41.)

(Tr. at 362-65.)  On September 25, 2006, the Honorable Robert C. Chambers ordered that the case be remanded to the Commission for "a further evaluation of the evidence and reassessment of the claimant's residual functional capacity." [Case 3:05-cv-00132, document 15, p. 7.] Judge Chambers stated in a footnote regarding the remand: "While the Court questions the manner in which the administrative law judge evaluated Mr. Walker's credibility, it would seem that, on remand, an evaluation of Mrs. Walker's credibility will also be required." (Id.)

The case was remanded to the Appeals Council who remanded to the ALJ on November 15, 2006.  (Tr. at 375-77.)  The ALJ was instructed to offer Mrs. Walker the opportunity to appear at a hearing and to take further action needed to complete the record, per the September 25, 2006 District Court Order.  (Tr. at 377.)

On March 7, 2007, the ALJ submitted the claim file to a psychiatric expert with specific questions about whether Claimant met a listing or whether Claimant's condition was exacerbated by substance abuse.  (Tr. at 389-94.)

On April 3, 2007, a supplemental hearing was held in which a VE appeared and testified. (Tr. at 399-406.)  Mrs. Walker waived her right to appear at the hearing. (Tr. at 401.)  On April 19, 2007, the ALJ again issued an unfavorable decision.  (Tr. at 348-60.)  On June 25, 2007, Mrs. Walker appealed directly to this court and brought the present action seeking judicial review of the

administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the

4

performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).
By satisfying inquiry four, the claimant establishes a prima facie
case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir.
1981).  The burden then shifts to the Commissioner, McLain v.
Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the
fifth and final inquiry: whether the claimant is able to perform
other forms of substantial gainful activity, considering claimant's
remaining physical and mental capacities and claimant's age,
education and prior work experience.  20 C.F.R. §§ 404.1520(f),
416.920(f) (2002).  The Commissioner must show two things: (1) that
the claimant, considering claimant's age, education, work
experience, skills and physical shortcomings, has the capacity to
perform an alternative job, and (2) that this specific job exists
in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574
(4th Cir. 1976).

     In this particular case, the ALJ determined that Claimant
satisfied the first inquiry because he had not engaged in
substantial gainful activity since the alleged onset date. (Tr. at
353.)  Under the second inquiry, the ALJ found that Claimant
suffered from the severe impairments of degenerative joint disease,
hearing loss, limited visual acuity, a depressive disorder,
borderline intellectual functioning, and an anxiety disorder. (Tr.
at 353-54.)  At the third inquiry, the ALJ concluded that
Claimant's impairments did not meet or equal the level of severity

of any listing in Appendix 1.  (Tr. at 354-55.)  The ALJ then found that Claimant had a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 355-58.)  As a result, Claimant could not return to his past relevant work.  (Tr. at 358.)  Nevertheless, the ALJ concluded that Claimant could have performed jobs such as a price marker, office helper, information clerk, and addresser/labeler which exist in significant numbers in the national economy.  (Tr. at 358-59.)  On this basis, benefits were denied.  (Tr. at 59-60.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty

6

to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 45 years old at the time of his death. (Tr. at 14, 358.) He completed the tenth grade. (Tr. at 356.) In the past, he worked as a construction laborer and groundskeeper. (Tr. at 402.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

Physical Evidence

Records dated March 3, 2001 to April 11, 2003, indicate Claimant was treated at Ebenezer Medical Outreach, Inc. for a variety of medical issues and medication management. Although the handwritten clinical notes are largely illegible, what is legible shows that the treatment related to depression, panic attacks, sleep problems, weight gain, chronic pain in back and legs, rectal bleeding, and chest discomfort. (Tr. at 183-235.)

On September 2, 2001, Paul Tadak, physical therapist, St. Mary's Rehabilitation Services, stated in an outpatient discharge summary that Claimant was diagnosed with low back and left leg

pain, had attended five visits, and was a "no-show" for two visits. (Tr. at 131.)  Mr. Tadak further noted: "During physical therapy, the patient stated that he was experiencing less radiating pain into the lower extremities... the patient's wife called stating that her husband is not getting better and that he will discontinue therapy."  (Id.)  In his initial evaluation dated August 6, 2001, Mr. Tadak stated that Claimant indicated he had "low back and right leg pain" after being in a motor vehicle accident ten years ago, resulting in surgery to remove a disc in his back.  (Tr. at 132-33.)

On July 31, 2002, Claimant was treated at St. Mary's Hospital after he "fell off a curb injuring his right ankle, right foot, and right hand."  James Toothman, D.O. diagnosed Claimant with "right hand contusion, right ankle sprain/foot contusion" after x-rays revealed "No acute process... No fracture." (Tr. at 293-94.)

On February 14, 2003, a State agency medical source completed a disability evaluation of Claimant for the Disability Determination Service.  (Tr. at 160-74.)   Drew C. Apgar, D.O. examined Claimant and made these conclusions:

```
IMPRESSION:
1.   Chronic pain syndrome - history of trauma - history
     of bulging lumbar disc - radiculopathy.
2.   Rectal blood by history.
3.   Anxiety with panic features.
4.   Depression with psychotic features - insomnia.
5.   Chest pain - ischemia versus musculoskeletal pain.
6.   Chronic tobacco use.
7.   Chronic alcohol use by history.
8.   Knowledge deficit - unable to write.
```

8

SUMMARY:

The claimant is of working age...Fine coordination, pinch and manipulation are intact bilaterally. Claimant is able to perform rapid alternating hand movements without difficulty...No joint abnormality is observed or palpated...Gait is steady...No cane or other device is required for ambulation...Chronic lung disease is apparent with coarse sounds. There is decreased air movement and wheezing. There is no evidence of rales, rhonchi, use of accessory muscle, prolonged expiration and cyanosis. Pulmonary function testing is necessary to further evaluate this claimant. There is no evidence of congestive heart failure...Chest pain is reported... There are no medical contraindications or risk factors to claimant's ability to perform any exercise or pulmonary testing. Exercise tolerance is limited secondary to pulmonary and musculoskeletal problems.

Claimant reports feeling depressed. This has been going on for years. Claimant admits suicidal ideation. Claimant attempted suicide in the past. Claimant is friendly, cooperative and forthcoming today. Claimant has a pleasant and engaging demeanor. Claimant's interests are not constricted. Claimant does demonstrate an awareness of the events in the world. Claimant is alert and oriented to person, place and time. Claimant does display concern for maintaining current relationships which are supportive. Claimant does demonstrate good hygiene and makes an effort at appropriate personal appearance. Claimant does demonstrate an awareness of means and willingness to improve claimant's circumstances.

Based on objective findings, claimant would have no difficulty with handling objects with the dominant hand, hearing, speaking. There may be some difficulty with standing, walking, and traveling. There may be marked difficulty with sitting, lifting, carrying, pushing, and pulling. Effort was satisfactory and the observations above are considered essentially reliable.

Mental status was normal despite history of depression. Claimant's understanding and memory are intact. Sustained concentration is demonstrated throughout the exam. Interaction and adaption appropriate to the needs of the examination. There is significant limitation associated with education. Nevertheless, Claimant should be capable of managing benefits if awarded without

assistance.

(Tr. at 170-72.)

On February 28, 2003, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with no manipulative, visual, or communicative limitations. (Tr. at 175-79.)   The only limitations established were climbing occasionally and to avoid concentrated exposure to cold.  (Tr. at 177, 179.)  The evaluator, Fulvio R. Franyutti, M.D. noted:

> Patient with history of back and leg pain syndrome...all considered and RFC reduced to medium and limited climbing because of breathing problems, pain and fatigue...
>
> (ALJ decision to light in the past) I agree with ALJ decision to light in 3/01 however currently and based on clinical and objective findings patient could perform medium work with limited climbing and hazards.

(Tr. at 180-81.)

On July 17, 2003, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with all posturals being limited to "occasionally" and no manipulative, visual, communicative or environmental limitations.  (Tr. at 250-57.) The evaluator, Thomas Louderman, D.O., agreed with the ALJ's decision of "light" duty and noted that Claimant died on April 15, 2003 of a drug overdose. (Tr. at 256-57.)  A second Physical Residual Functional Capacity Assessment signed on the same date (Tr. at 258-65) by Dr. Louderman, does not find any postural limitations.  (Tr. at 260.)

10

Psychiatric Evidence

On September 16, 2002, Katie Dawson, M.A., supervised psychologist, and Stephanie Smith, M.A., licensed psychologist, Prestera Center for Mental Health Services, Inc., evaluated Claimant for the West Virginia Department of Health and Human Resources following his application for a medical card to determine his current mental status. (Tr. at 275-79.) They stated:

> Mr. Walker...reports chronic pain, which causes him to wake up in the middle of the night. Mr. Walker also reports an extensive history of depressive symptomology... He reports he has been hospitalized at St. Mary's Hospital on two separate occasions, approximately 10 to 12 years ago. He reports he was hospitalized for a period of six weeks after a suicide attempt by cutting his wrists. He also reports he was admitted to St. Mary's Hospital for cocaine and drug dependence. He denied receiving any other psychiatric or substance abuse treatment...
>
> Mr. Walker gave a vague history of his alcohol and drug abuse. He reports he used to drink alcohol on a daily basis, consuming a 12 pack of beer per day. He also states he had a history of cocaine dependence, but has not used in "several years". He reports in 1989 he was charged with possession of cocaine and marijuana in Florida and served two days in jail. He was also ordered to have probation and drug treatment as a result...
>
> His attitude is guarded and he gave limited responses to questions asked. Speech was difficult to understand at times, as the examiner had to ask him to repeat his answers on numerous occasions...
>
> Summary and Recommendation:
> Mr. Walker is a 44 year old, separated, unemployed, Caucasian male... He appears to be suffering from a depressive disorder; however, it was difficult to determine and assess the full extent of his problem and symptoms due to his guarded attitude. It is recommended he be evaluated by a psychiatrist to assess his need for psychotropic medication.

11

(Tr. at 276-79.)

On October 27, 2002 through October 30, 2002, Claimant received treatment at Prestera Center's Crisis Residential Unit. (Tr. at 280-92.)  He was admitted "for crisis stabilization due to crying spells, suicidal thoughts, and hallucinations of demons." (Tr. at 289.)  He was discharged following a positive response to a psychiatric consultation, individual psychotherapy, and group therapy.  (Tr. at 280.)

On February 3, 2003, a State agency medical source completed a consultative examination report for the West Virginia Disability Determination Service. (Tr. at 134-41.)   The evaluator, Brian Bailey, M.A. noted Claimant

> reported that he has used alcohol for a number of years.
> He suggested that he used alcohol excessively through
> much of the 1980's... (he) indicated that he had used
> alcohol minimally within the past four to five years...
> (he) reported that he was also heavily involved with the
> use of cocaine in the mid to late 1980's, though he
> denied use of cocaine or any other illicit substance
> since the late 1980's.  He reported that he last consumed
> alcohol on Super Bowl Sunday, at which, he consumed two
> beers.  He reported that he was treated for substance
> abuse at St. Mary's Hospital...in the late 1980's, though
> no other history of substance abuse treatment was noted.

(Tr. at 136.)

Based on his evaluation of Claimant, Mr. Bailey reached these conclusions:

> SUBJECTIVE SYMPTOMS:
> Recurrent depression, insomnia, low energy, and
> anhedonia, recurrent thoughts of suicide, difficulties
> with decision making, low self-esteem, low frustration
> tolerance, periodic irritability, and occasional anxiety.

12

OBJECTIVE FINDINGS:
Adequate personal appearance/grooming/hygiene, disorientation to time, orientation otherwise intact, depressed mood/congruent affect, immediate memory within normal limits, recent memory severely deficient, remote memory moderately deficient, concentration mildly deficient, psychomotor behavior within normal limits.

DIAGNOSES:
AXIS I: (296.32) Major depressive disorder, recurrent, moderate
AXIS II: (V62.89) Borderline intellectual functioning
AXIS III (Per claimant) Recurrent back pain, unspecified, heart disease, occasional headaches, and shortness of breath.

DIAGNOSTIC RATIONALE:
Mr. Walker reports a history of recurrent depression, with his most recent episode involving pervasive feelings of depression, a loss of interest in a wide range of previously enjoyed activities, insomnia, low energy, guilt over neglecting his health, and/or not making enough contribution to his family's livelihood, indecisiveness, and recurrent thoughts of suicide. The result on his WAIS-III appeared to be valid and indicate borderline intellectual functioning (WRAT-3 indicated 6th grade reading level, 2nd grade spelling level and 3rd grade arithmetic level).

PROGNOSIS: Fair.

CAPABILITY: If awarded benefits, Mr. Walker would need no assistance in managing his funds.

(Tr. at 140-41.)

On February 13, 2003, a State agency medical source completed a Psychiatric Review Technique form ("PRTF"). (Tr. at 142-55.) The evaluator, Frank D. Roman, Ed. D., found that an Residual Functional Capacity ("RFC") Assessment of Claimant was necessary based on "12.02 Organic Mental Disorders" and "12.04 Affective Disorders." (Tr. at 142.) He concluded that Claimant had a mild

13

degree of limitation regarding restrictions of activities of daily living ("ADL"), moderate degree of limitation regarding difficulties in maintaining social functioning, maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 152.) Dr. Roman found the evidence did not establish the presence of the "C" criteria. (Tr. at 153.)

On February 13, 2003, Dr. Roman completed a RFC Assessment - Mental. (Tr. at 156-59.) He concluded that there was no evidence that Claimant had limitation in the ability to work in coordination with or proximity to others without being distracted by them or in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 156-57.) Dr. Roman determined that Claimant was not significantly limited in the ability to remember locations and work-like procedures, to understand, remember, and carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to make simple work-related decisions, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to ask simple questions or request assistance, to maintain socially appropriate

14

behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriate to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. (Id.) He found Claimant was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, to understand and remember detailed instructions, to carry out detailed instructions, and to maintain attention and concentration for extended periods. (Id.)  Dr. Roman noted:

> The claimant is a 45 year old married male applying for disability due to arthritis, CBP [unknown acronym], and a hx [history] of depression.  He completed 10th grade in regular classes.   He worked at unskilled laborer positions up to '99.  He has not worked in 3 years.  He is on rx [prescribed] meds and has initiated treatment for depression in 1/03.  He has no recent AH/SA. Measured IQ's fall at the mid BIF [borderline intellectual functioning] range.   Based on available MER [medical evidence of record], he is able to perform routine ADL's and follow 1 and 2 step directions in a low stress setting.

(Tr. at 158.)

On July 7, 2003, a State agency medical source completed a Psychiatric Review Technique form ("PRTF"). (Tr. at 236-49.)  The evaluator, Samuel W. Goots, Ph. D., found "insufficient evidence" to make a medical disposition regarding Claimant's organic mental disorders and affective disorders. (Tr. at 236-49.) He found that the evidence did not establish the presence of the "C" criteria. (Tr. at 247.)  Dr. Goots noted: "Clt [claimant] died of drug OD

[overdose] - 4/15/03." (Tr. at 248.)

On April 28, 2004, Cynthia L. Clay, Licensed Psychologist, stated in a letter to Claimant's representative:

> I am responding to your request for information regarding Eddie Walker, who I saw for behavioral health services at Ebenezer Medical Outreach Center.
>
> Due to the length of time since my last contact with Mr. Walker and lack of opportunity for updated assessment, I am unable to complete the Residual Functional Capacity Form. However, I hope the following treatment summary will be helpful to your efforts on his behalf:
>
> Mr. Walker was seen for sessions on the following dates: August 10, 2002, September 21, 2002, October 12, 2002, December 14, 2002 and February 15, 2003. His diagnosis of record is: Bipolar II Disorder, History of Alcohol Abuse, Rule out PTSD. Treatment prognosis was fair.
>
> He was referred to Dr. Sablay, psychiatrist, for medication review services at Ebenezer Medical Outreach.

(Tr. at 295.)

<u>Additional Evidence Reviewed by the ALJ</u>

On July 2, 2003, Zia Sabet, M.D., Deputy Chief Medical Examiner, and James A. Kaplan, M.D., Chief Medical Examiner reported that they had performed an autopsy on the Claimant on April 16, 2003, following his April 15, 2003 death. (Tr. at 322-27.) The report notes, among other details, that Claimant's pocket contained "a receipt of a shotgun in case of <u>Mack & Bass</u> dated April 12, 2003." (Tr. at 323.) The report concludes:

> <u>PATHOLOGICAL DIAGNOSES</u>:
> I.   Combined non-prescribed morphine and prescribed venlafaxine intoxication.
> II.  Hepatosplenomegaly: The liver weighs 2550 grams and spleen 420 grams.

16

III.   Advanced left ventricular hypertrophy.  No injuries
       are noted.
IV.    Toxicology: Morphine and venlafaxine in the blood
       and venlafaxine and metabolite, diphenhydramine,
       quinine, caffeine, nicotine and metabolite in the
       urine.

OPINION:
It is our opinion that Eddie C. Walker, a 45 year old
man, died as the result of combined non-prescribed
morphine and prescribed venlafaxine intoxication.   No
significant  recent  injuries  were  noted  at  complete
postmortem  examination.   Because  of  the  circumstances
under which the deceased used the drug is unknown, the
manner of death is classified as Undetermined.

(Tr. at 325.)

Additional Evidence Solicited by the ALJ

On March 7, 2007, the ALJ requested that Stewart Gitlow, M.D.,

a  psychiatrist,  review  Claimant's  case  file  and  provide  his

professional  opinion  regarding  Claimant's  Social  Security

Disability claim.  (Tr. at 389-92.)  On March 24, 2007, Dr. Gitlow

responded to the ALJ's request.  (Tr. at 393-98.)  Dr. Gitlow

stated:

During the period in question (8/28/02 - 4/15/03), the
following  files  are  relevant  from  a  psychiatric
perspective: B19F represents a 9/16/02 masters level
clinical interview for the claimant, who gave a vague
history of his alcohol and drug abuse.  An unspecified
depressive disorder was identified but the claimant is
noted to be prescribed several psychoactive medications,
including Effexor, Xanax, and Neurontin.  On 10/27/02,
the patient had a three day admission to a crisis
residential unit where the claimant is noted to have
severe major depression.  He is noted to have suicidal
thoughts but no plan, poor concentration, auditory and
visual hallucinations, poor memory, and poor ability to
interact and communicate.  The claimant at this time
remains on sedative medication which can cause depressive
symptoms, but he is prescribed a low dose and no tox

17

screen is obtained. B5 is a 2/14/03 CE in which the claimant reports anxiety and depression; alcohol use is denied for previous five years. The claimant was noted to be pleasant with a normal range of interests, good hygiene, and is noted to have a normal mental status with sustained concentration and normal understanding and memory. This examination, unlike those reported in the documents noted above, was performed by a physician. Exhibit B2 is a masters level examination of 1/28/03 in which the claimant acknowledges minimal alcohol use within the past 4-5 years, last consumed on "Super Bowl Sunday" when he had two beers. IQ testing reveals scores between 75 and 79. Mild difficulties in social functioning were noted. ADLs are intact. The patient is noted to have moderate major depression with borderline intellectual functioning. Concentration is reported as mildly deficient.

(1) The medical evidence establishes the presence of borderline intellectual functioning and major depression of moderate severity. Note that there are a minimum of MD notes present and that non-physician reviews would not have taken into consideration medication side-effects or the potential impact of substance abuse or medical disease upon psychiatric symptoms.

(2) No, as the B criteria are not met. The claimant had no periods of decompensation within the questioned period of time, mild impairment in social functioning, mild impairment in concentration/persistence/pace, and normal function in ADL's.

(3) No (Claimant's impairments, considered in combination, did not equal a "Listing")

(4) The autopsy report indicates the presence of unprescribed morphine but no other sections of the record during the time period in question establish the presence of illicit substance use. The patient acknowledges a history of substance use but denies ongoing use and there is no objective evidence to support his contention. I, therefore, cannot conclude that the claimant was or was not using illicit substances during the period in question and have responded to your questions with the presumption that the claimant's statements that he was not using substances were true.

(5) Attached (Response to statement: "If the claimant's

mental impairments did not cause such severe limitations during the period from August 28, 2002 until April 15, 2003, please complete the enclosed Form."

(Tr. at 393-94.)

On the attached "Medical Assessment of Ability to do Work-related Activities (Mental)," Dr. Gitlow indicated that Claimant's abilities were "good" in the areas of "deal with the public; interact with supervisors; maintain attention/concentration; maintain personal appearance; behave in an emotionally stable manner; and relate predicably in social situations." (Tr. at 395-96.) Claimant's abilities were "fair" in the areas of "follow work rules; relate to co-workers; use judgment; deal with work stresses, function independently, understand, remember and carry out detailed, but not complex job instructions; understand, remember and carry out simple job instructions; and demonstrate reliability." (Id.) Claimant's ability to "understand, remember and carry out complex job instructions" was considered to be "poor." (Tr. at 396.)

Plaintiff's Challenges to the Commissioner's Decision

Plaintiff asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to evaluate all of the evidence before arriving at a residual functional capacity ["RFC"]; and (2) the ALJ failed to pose a proper hypothetical question to the vocational expert ["VE"]. (Pl.'s Br. at 7-11.)

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant had the RFC to perform a range of light exertional work during the relevant period; and (2) both the RFC assessment and the ALJ's hypothetical question containing the same limitations were sufficient because they contained all of Claimant's limitations that were supported by the record.  (Def.'s Br. at 12-17.)

<u>Evaluation of All Evidence</u>

Plaintiff first argues that the ALJ failed to properly evaluate all of the evidence in assessing RFC.  Specifically, Plaintiff argues that the ALJ in arriving at Claimant's RFC determination "ignored the evidence that he solicited from a psychological expert and evidence from the autopsy performed on Mr. Walker... (and) ignored Dr. Apgar's findings."  (Pl.'s Br. at 8.)

The Commissioner responds that substantial evidence supports the ALJ's determination that Claimant had the RFC to perform a range of light exertional work during the relevant period. Specifically, the Commissioner asserts that the ALJ did not ignore the evidence from consulting psychologist Mr. Bailey, Dr. Gitlow, Dr. Apgar, or the autopsy report: "As required, the ALJ discussed the medical evidence concerning the relevant period, and reasonably found that nothing therein supported a finding that Mr. Walker was disabled within the meaning of the Act, or that he could not perform work within the generous parameters of the RFC finding."

(Def.'s Br. at 14-15.)

The ALJ wrote a detailed 10-page Decision.  (Tr. at 351-60.)
Contrary to Plaintiff's assertions, the ALJ did not ignore the
records from psychologist Brian Bailey, consulting psychiatrist Dr.
Gitlow, consulting osteopathic physician Dr. Apgar, or the autopsy
report, but analyzed these records.  Although the undersigned
concedes that the ALJ did not refer to the evaluators by name,
which would be preferred, he made reference to the record exhibit
numbers and page numbers, which can then be cross referenced to
determine the evaluators' names.  The ALJ stated:

> I find less than severe impairment from the chest pain.
> The claimant had a normal echocardiogram showing trace
> mitral insufficiency and normal left ventricular function
> (Exhibit B-6F p. 15).  Myocardial perfusion stress test
> revealed normal myocardial perfusion (Exhibit B-6F p.
> 11).  Dr. Taylor of Cardiology Consultants upon
> examination found the claimant "stable and would appear
> to have only benign ventricular ectopy, through a
> coronary etiology can not be excluded" (Exhibit B-11 F).
> Autopsy results show the claimant had mild
> artherosclerosis of the coronary arteries, with no more
> than 30% compromise (Exhibit B-AC-2)...

(Tr. at 354.)

> A medical expert reviewed the entire record and opined
> the claimant had good ability to deal with the public and
> interact with supervisors, and fair ability to relate to
> coworkers (Exhibit B-22F)  The undersigned finds the
> claimant experienced moderate difficulty in maintaining
> social functioning... The consultative psychologist noted
> that the claimant was mildly to moderately deficient in
> concentration, mild deficient in persistence and mild to
> moderately slow in pace and markedly deficient in recent
> memory (Exhibit B-3F p.6).  The medical expert opined the
> claimant had fair ability to deal with work stress,
> maintain attention and concentration, demonstrate
> reliability, and understand, remember, and carry out

21

simple detailed job instructions (Exhibit B-22F). I find the observations of the examining psychologist in combination with the borderline [intellectual functioning that] the claimant was moderately limited in ability to maintain concentration persistence or pace.

(Tr. at 355.)

Mr. Walker died April 15, 2003. The cause of death was determined to have been combined non-prescription morphine and prescribed venlafaxine intoxication (Exhibit B-AC-1). The circumstances of drug use were unknown, the death was classified as undetermined (Id.) As there was no evidence available for the medial examiner to conclude a suicide, the undersigned does not find the claimant's cause of death to be directly related to his mental impairments. The undersigned notes the claimant had a history of alcohol dependence and substance use, which raises the possibility, but does not support a conclusion, that Mr. Walker was abusing medication (Exhibit B-22F).

The claimant was observed to have limited visual acuity and difficulty hearing and understanding conversational voice during the consultative examination (Exhibit B-2F p. 3)...

The consultative medical examiner disclosed and made findings of positive straight leg raising, restricted range of motion in the spine, decreased reflexes and positive radiological evidence of degenerative joint disease in the spine with constant back pain and intermittent radiating pain (Exhibit B-5F). The state agency medical consultants opined the claimant was limited to light exertional work (Exhibits B-6F and B-9F). This is consistent with the objective medical findings and treatment history... The medical expert's opinion regarding the claimant's mental functioning during the relevant time period has not been given controlling weight, as the residual functional capacity assessed using the state agency opinion is more limiting and thus more favorable to the claimant.

(Tr. at 357-8.)

The ALJ's citations to the record were occasionally incorrect.

However, contrary to the Plaintiff's assertions, the ALJ did review

22

the evidence of consulting psychologists Bailey and Roman, and Dr.
Gitlow, and gave more weight to Dr. Gitlow, as it was more
favorable to Claimant. (Tr. at 358.)  Also, the ALJ did not ignore
the evidence of Dr. Apgar.  (Tr. at 358.)  The ALJ's RFC finding
accommodates the limitations found by Dr. Apgar by limiting
Claimant to light work, specifying a sit-stand option, and
providing for the reduced right hand grip strength by precluding
repetitive gross manipulation with the right hand.  (Tr. at 160-74,
355-58, 403-04.)

The undersigned further notes that on February 28, 2003, a
State agency medical source examiner, Dr. Franyutti, opined that
Claimant could perform medium work with no manipulative, visual, or
communicative limitations.  (Tr. at 175-79.)  Dr. Franyutti noted
that while he agreed "with ALJ decision to light in 3/01 however
currently and based on clinical and objective findings patient
could perform medium work with limited climbing and hazards." (Tr.
at 180-81.)

Also, the undersigned finds that ALJ did not ignore the
autopsy evidence but discussed it and found there was no evidence
to support a finding that Claimant's death was directly related to
his mental impairments.  (Tr. at 357.)  Also, although the autopsy
showed left ventricular hypertrophy, substantial evidence still
supports the ALJ's finding that Claimant's chest pain was not a
severe impairment.  (Tr. at 354.)  An EKG and stress test showed

23

that Claimant had only trace mitral insufficiency, normal myocardial perfusion, and normal left ventricular function. (Tr. at 218, 223.) Although the ALJ did not discuss the autopsy listing of "hepatosplenomegaly" as a pathological diagnosis, a medical term which means "enlargement of the liver and spleen," the ALJ did discuss the mental and physical aspects of the report relevant to Claimant's application for benefits.

The undersigned proposes that the presiding District Judge **FIND** that the ALJ did consider the "record as a whole" and did not discuss only selective evidence negative to Claimant, nor did the ALJ give more weight to certain evidence without stating any reason why it is more credible. Raney v. Barnhart, 396 F.3d 1007, 1009 (8th Cir. 2005) ("[Judicial] review of a decision of the Commissioner . . . in a disability benefits case is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole."). While not required to discuss every piece of evidence, an ALJ should discuss evidence that, if believed, could lead to a finding of disability. Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004); 20 C.F.R. § 404.1523 (2005); Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) (per curiam); Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (Determination of whether substantial evidence supports decision in social security disability case requires reviewing court to consider not only evidence in the record that

24

supports Commissioner's determination, but also any evidence that detracts from that conclusion).

Hypothetical Question

Plaintiff next argues that the ALJ failed to pose a proper hypothetical question to the vocational expert ["VE"]. (Pl.'s Br. at 10-11.) Specifically, Plaintiff asserts that the ALJ's question was "vague at best in that the ALJ makes no effort at laying out in what areas the claimant is "limited but satisfactory" in that the number of limited areas may combine to prove disability considering what areas the claimant is limited." (Pl.'s Br. at 10.)

The Commissioner responds that both the RFC assessment and the ALJ's hypothetical question containing the same limitations were sufficient because they contained all of Claimant's limitations that were supported by the record. (Def.'s Br. at 15-17.) Specifically, the Commissioner states:

> Plaintiff objects to the ALJ's inquiry to the VE to consider that Mr. Walker's mental functioning was "limited but satisfactory" in most areas (Tr. 403). She contends that this "vague" question fails to identify the areas in which Mr. Walker's functioning is limited...However, any potential confusion concerning the ALJ's question is cured by a review of the record, which contains a mental RFC assessment form completed by Dr. Roman, and identified at Exhibit 4F (Tr. 142-55). This standard Agency form contains the definitions of the terms utilized by the ALJ in his hypothetical question. Moreover, if Plaintiff's counsel were unfamiliar with these terms of this common form, she could have made an inquiry or requested clarification at the hearing.

(Def.'s Br. at 16-17.)

To be relevant or helpful, a vocational expert's opinion must

25

be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ posed the following hypothetical questions to VE Anthony Michael, Jr.:

> Q   Okay. If you would sir let's consider someone 44 to 45 years old. I've considered that they have a limited education. Let's further assume that they have the Claimant's past training and work experience. Let's start off by limiting the individual to light exertional work with no prolonged standing or walking. He'd require a sit/stand option at half hour intervals, no repetitive bending, turning or twisting, only occasionally stoop, kneel or crouch, no operation of foot controls with the right lower extremity and need to avoid exposure to hazardous conditions and machinery, no repetitive gross manipulation with the right upper extremity which is non-dominant.

26

Let's further assume that the individual would have a [inaudible] which is defined as seriously limited, but not precluded ability to understand, remember and carry out complex job instructions and all other areas he's limited, but satisfactory. With those limitations could you identify any jobs in the regional or national economy?

A    Your Honor, could you repeat the last part about your mental limitations?

Q    Yes, he has a poor ability to understand and remember and carry out complex job instructions.

A    Okay.

Q    In all other areas he's limited, but satisfactory.

A    Yes, Your Honor.

Q    Okay, give me some idea of the types of jobs?

A    Yes, your Honor.  In the light exertional level there would be examples such as price marker and there are 115,000 in the nation and 7,800 in the region of Ohio, Kentucky, and West Virginia and office helper is also light and there are 217,000 in the nation and 12,000 in the same region.  And at sedentary level would be information clerk and there are 100,000 in the nation and 15,000 in the region and another sedentary example is addresser labeler and there are 80,000 in the nation and 4,000 in the region.

Q    Let's assume the same physical limitations, but mentally the individual would be mildly to moderately limited in the ability to concentrate for prolonged periods of time, but he has the ability to understand, remember and carry out simple instructions.  He is mildly deficient in the ability to make work-related decisions, but he has a good ability to make simple work-related decisions in a low-stress work environment and he is able to respond appropriately to supervisors and co-workers in the usual low-stress situations and he is able to deal with changes in a routine work setting.  How would that affect?

27

A    Your Honor, that would not change my testimony. (Tr. at 403-04.)

The court proposes that the presiding District Judge **FIND** that the hypothetical question posed by the ALJ included those limitations that were supported by substantial evidence of record. The ALJ's generous residual functional capacity finding related to Claimant's impairments reflected Claimant's limitations as supported by substantial evidence of record.  These limitations were included in a hypothetical question, and the vocational expert concluded that Claimant could have performed work.  As noted in Plaintiff's argument, Claimant's representative had an opportunity to pose additional hypothetical questions to the vocational expert, and did so.  (Pl.'s Br. at 9.)  The record clearly shows that the ALJ was present and participating in the re-examination of the vocational expert.  (Tr. at 404-06.)

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have

28

fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F. 2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to transmit a copy of the same to counsel of record.

August 11, 2010
        Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge